Robinson, Appellant, *v.* Brown.

Argued March 23, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

*Irwin N. Rosenzweig*, with him *Rosenzweig, Krimsky & Goichman*, for appellant.

*Fred J. Silverman*, with him *Max E. Cohen*, and *William W. McAdams*, for appellee.

OPINION BY WATKINS, J., June 15, 1961:

This appeal is from an order of the Municipal Court of Philadelphia refusing appellant's motion for a new trial.

On November 10, 1958, the appellant, John C. Robinson, was driving his automobile north on 13th Street, a through street, in the City of Philadelphia. As he approached the intersection of 13th and Cumberland Streets, the appellee, Edward Brown, was driving west on Cumberland Street, which was controlled by a stop sign. The appellee failed to stop for the stop sign and the cars collided in the intersection.

The court below sets forth the testimony as follows:

"The plaintiff testified that he had chains on his automobile tires; that he had stopped about 10 to 15 feet from the corner of Cumberland Street to permit a truck to park, then took off in low gear, then in second gear; that when he was 10 feet from Cumberland Street he saw defendant's automobile about 25-30 feet east of the stop sign at 13th Street, coming west on Cumberland Street at about 30 miles per hour; that the plaintiff 'broke' his speed to 15 miles per hour, then 10 miles per hour, and when he saw that the defendant was not going to stop the plaintiff applied his brakes and tried to stop, but it was too late. The plaintiff stated that there was no snow under the railroad bridge at the intersection and that he didn't see any ice there.

"In contradiction to this testimony, the defendant, while admitting that he went through the 'stop sign', testified that he had snow tires on his car; that he was traveling in the center of the street; had slowed down

to make a turn, and was only going 10 miles per hour; that as he entered the street under the bridge he noticed a sheet of ice and applied his brakes 'very softly' but nevertheless his car began to skid; that when he realized he was going to skid he blew his horn to warn other traffic; that he saw plaintiff's car about 30 feet away but he couldn't avoid the accident since he was 'bogged down' because of the ice."

The jury returned with a verdict that both parties were negligent, and the weather was a factor in the case; and that they would pay the doctor's bill of the appellant in the amount of $60. This was obviously an inconsistent verdict and apparently an attempt at a compromise. After further instructions, the jury returned a verdict for the defendant-appellee.

Appellant here seeks to raise several objections to the charge of the court below, although he took no objection to it at the time of trial, not even a general objection. Counsel for the appellant remained silent, when, at the conclusion of the trial court's charge he was afforded an opportunity to request additions or corrections. Questions not raised before the court below cannot be raised on appeal unless there exists a basic or fundamental error. Although this charge was not given the inflection desired by appellant, and was not couched in the specific language contained in charges accepted and followed by many of our courts, no fundamental error appears, so no discussion of these questions will be attempted. We have repeatedly held that it is a "well-settled rule that matters not properly raised in the court below may not be invoked on appeal." *Remmel v. Gallagher,* 190 Pa. Superior Ct. 100, 152 A. 2d 796 (1959).

The appellant complains of instructions given the jury after its return with the inconsistent verdict. The trial judge had asked counsel whether he had any suggestions for further instructions to the jury. Counsel

for the plaintiff-appellant made the following statement: "The only thing I would suggest is that the members of the jury be instructed that if they find for the plaintiff, they should come back and state the amount, and if they find for the defendant, they should come back and say that they find for the defendant." The trial judge so instructed but went further, saying: "If you are finding for the plaintiff, you have to fix whatever amount you think it is worth. That is the amount you give him. You should not compromise on any verdict."

This was clearly error. While the doctrine of comparative negligence is not recognized in Pennsylvania, compromise verdicts are returned by juries and have been upheld by our appellate courts. *Hilscher v. Ickinger*, 194 Pa. Superior Ct. 237, 166 A. 2d 678 (1960) ; *Elza v. Chovan*, 396 Pa. 112, 152 A. 2d 238 (1959). As Judge WOODSIDE so well put it in the *Hilscher* case: "Whenever there is substantial doubt as to the liability of the defendants, there can be a compromise verdict. A doubt concerning liability, which necessitated a reargument in this Court, supports an inference that the jury, too, entertained substantial doubts concerning the defendants' liability. The efficacy of the jury system is that it recognizes the grays which the law too frequently assigns to the limited categories of black and white. Jurors have a tendency to view the evidence as a whole and to apply to it their accumulated experience and combined sense of justice to arrive at a result they believe to be fair to all the parties under all the circumstances."

This question usually arises in appeals from verdicts which the appellant considers to be inadequate and not under the circumstances of this case. The error committed in this instance was that the court in its additional instructions injected itself into the deliberations and encouraged a basic change in the in-

tended verdict of the jury by, in effect, striking down the award of medical expenses to the appellant. The court in sending the jury back to correct their findings should not suggest a substantive change in their findings. *Van Buren v. Eberhard,* 377 Pa. 22, 104 A. 2d 98 (1954). "While it is entirely clear that the trial judge may send the jury back to the consultation room for the purpose of correcting their finding as to matters of informality and uncertainty, and where the issue has not been passed upon by them, yet the judge must not even suggest the alteration of a verdict in substance. The action of the judge in the correction of verdicts should be taken with great caution. He must not throw the weight of his influence into the deliberation of the jury as to matters exclusively within their province." 53 American Jurisprudence, "Trial" Section 1099.

The appellant also complains of the admission, over objection, of the testimony of a police officer as to the physical conditions existing where the accident occurred, when he did not arrive until about two hours after the accident. One of the main points of controversy in the trial of the case was whether or not there was ice on Cumberland Street under the bridge on the approach to 13th Street. It is clear that the road conditions were changing with the passage of time. It had started to snow an hour before the accident and continued until after the arrival of the police officer. Admission of testimony as to physical conditions should be limited to those at or about the time of the event in question, unless it is shown that they remained static for the time testified to until the happening of the event. *Johnson v. Phila. & Reading Rlwy.,* 283 Pa. 480, 129 A. 569 (1925); *Shuey v. Light,* 156 Pa. Superior Ct. 372, 40 A. 2d 116 (1944).

This is especially true when the testimony offered is that of a police officer. Jurors naturally attach

great weight to such testimony because of the position held by the witness and his inherent lack of interest in the litigation. The court's charge indicates that those characteristics of such testimony were emphasized to the jury so that the error admitting the testimony was compounded.

Order reversed and a new trial ordered.