J-A18045-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| R.L.W., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.S.H. | : | No. 412 WDA 2019 |

Appeal from the Order Dated February 22, 2019
in the Court of Common Pleas of Allegheny County
Civil Division at No(s): FD-11-006416

BEFORE: BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: FILED DECEMBER 05, 2019

R.L.W. ("Mother"), pro se, appeals from the Order dated February 20, 2019, and filed February 22, 2019,[1] in the Allegheny County Court of Common Pleas, denying Mother's Motion for Change in Counseling regarding her child with E.S.H. ("Father"), J.L.H.-W., born in August 2010 ("Child"). After review, we affirm the trial court's Order.

_____

[1] While the docket reflects a filed date of February 22, 2019, there is no notation on the docket that notice was given, and that the Order was entered for purposes of Pa.R.C.P. 236(b). See Frazier v. City of Philadelphia, 735 A.2d 113, 115 (Pa. 1999) (holding that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given"); see also Pa.R.A.P. 108(a) (providing that the entry of an order is designated as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)"). Thus, the Order was not entered and the appeal period was not triggered. Although we consider the matter on the merits, we caution the Court of Common Pleas of Allegheny County with regard to compliance with the rules related to the entry of orders.

The trial court summarized the procedural and factual history as follows:

Mother and [Father] are the parents of [Child], who is the subject of these proceedings. Pursuant to an April 27, 2015 Order of Court, the parties share legal custody; physical custody is rotated on a weekly basis with exchanges taking place on Thursdays. As the docket reflects, this case has a lengthy and acrimonious history. The parties are extremely litigious and have regularly appeared in this [c]ourt on both serious and petty matters. The parties have been ordered to participate in both individual and co-parent counseling, but the animosity between them remains relatively strong.

The case history relevant to the within appeal commenced on August 28, 2018, when Father presented a Petition for Special Relief to this [c]ourt. Therein, Father sought, inter alia, an order granting him permission to enroll [] Child in counseling. Father contended that he had periodically, and unsuccessfully, requested Mother's consent for the same since January of 2017. He sought an order requiring the parties to enroll [] Child in counseling with a jointly selected counselor.

In Mother's Response to Father's [M]otion, she sought, among other things, to defer Father's counseling request to conciliation.

Consistent with Mother's request, this [c]ourt ordered that conciliation on the parties' issues should occur, and the [c]ourt subsequently conducted said conciliation on September 20, 2018. While Mother expressed opposition to counseling, she ultimately agreed to an evaluation[,] with Father selecting the counselor if he paid 100% of the counselor's unreimbursed costs. Mother's sole caveat was that Father not select a counselor from two specific entities, the names of which she provided. It was further agreed that if the counselor recommended a course of counseling, the parties would split the unreimbursed cost in proportion to their incomes.

The aforesaid agreement was deliberately omitted from the September 20, 2018 Court Order, at the request of counsel for Mother. Mother's counsel opined that inclusion of the agreement in the court order could have negative insurance coverage ramifications. Father's counsel agreed to omit the same. This [c]ourt informed the parties that their agreement was reflected in

the [c]ourt's notes and that if necessary, either party could seek a [c]ourt [o]rder to enforce the same.

Subsequently, on October 5, 2018, Father presented an Emergency Petition for Special Relief, wherein he averred that he had scheduled a counseling session for [] Child, given Mother notice of the same, and that Mother had cancelled the session. Father was unable to proceed with the counseling because the provider refused to see [] Child without Mother's consent or a [c]ourt [o]rder authorizing the same.

Mother did not deny Father's allegations; rather, she informed the [c]ourt that she had simply changed her mind since the conciliation. She still maintained that [] Child did not need counseling, but contended that she now wished to participate in the counselor selection process. Mother proposed that the parties obtain a consultation from one of three entities selected by her or proceed to a hearing on the issue.

[The trial court] granted Father's [E]mergency [P]etition, allowing him to select a counselor for [] Child without Mother's consent or interference. The Order also provided that Mother would be responsible for any counseling costs which would have been covered by insurance but for the existence of the Court Order.

On October 11, 2018, Mother filed a timely Notice of Appeal from the October 5, 2018 Order of Court, which ... the Superior Court docketed at 1465 WDA 2018 (the "2018 Appeal"). [The trial court] prepared and filed a Pa.R.A.P. 1925(a) [O]pinion addressing Mother's allegations of error. In the meantime, Mother and Father's counsel were present in motion's court on a support[-]related issue. The issue of [] Child's counseling was referenced; Mother represented that the counselor would not communicate with her, that Father was denying her access to the counselor, and that she believed the October 5, 2018[,] Court Order mandated the same. The [c]ourt assured Mother that the October 5, 2018 Court Order did not suspend her legal custody or deny her access to the counselor.

Mother subsequently discontinued the 2018 Appeal in December 2018. She then presented a Petition for Conciliation to this [c]ourt on January 24, 2019, wherein she requested the [c]ourt to clarify that she retained shared legal custody and was

- 3 -

entitled to equal access to [] Child's professional service providers, including [Child's counselor], the individual selected by Father as [] Child's counselor pursuant to the [c]ourt's October 5, 2018 Order. This [c]ourt granted Mother's [P]etition and added a provision directing that all communications of [Child's counselor] be made to both parties.

Nearly one month after the [c]ourt's entry of the January 24, 2019 Order, Mother presented—on February 20, 2019—a Motion for Change in Counseling ("the Motion"). Therein, she alleged that she had been unable to speak with or otherwise communicate with [Child's counselor], whom she asserted would not return her calls or respond to her emails; that Father was essaying to alienate [] Child from her and to interfere with her attempts to contact [Child's counselor]; that [Child's counselor] has a criminal record and lacks a license to practice as a therapist; and that she was extremely uncomfortable with [Child's counselor] being [] Child's counselor. Mother requested the [c]ourt to permit her to choose a new family counselor, for counseling in which [] Child and the parties would participate. Mother did not request a hearing.

After receiving the Motion [and] Father's response thereto, and [after] hearing the parties' oral arguments on the same,[2] ... the [c]ourt granted a modified version of Father's proposed order (the "Order"). The Order[] (i) required Child to continue counseling with [Child's counselor]; (ii) permitted Mother to make an appointment with [Child's counselor] to discuss [] Child's treatment and Mother's areas of concern; (iii) prohibited Mother from further contacting [Child's counselor] or his office following the aforementioned appointment without [Child's counselor]'s consent or the existence of an emergency; and (iv) required [Child's counselor] to communicate information regarding Child and/or her counseling, if he deems such communication to be appropriate, to both Father and Mother in writing. In addition, the Order permitted the parties, who were scheduled for a [] mediation the following day, to proceed immediately to a judicial conciliation in the event they were unable to resolve their custody-

_____

[2] It is believed that the reference to oral argument is an error, as the trial court and the parties appear to agree that no argument took place.

related issues, thereby allowing them to skip the Generations conciliation usually required in Allegheny County.[3]

On March 15, 2019, Mother filed a Notice of Appeal from the Order to the Superior Court, which docketed the appeal at 412 WDA 2019. Mother's Notice of Appeal did not contain language designating the appeal as a children's fast track appeal. [See] Pa.R.A.P. 904(f). The Notice of Appeal also did not contain and was not accompanied by the concise statement of errors complained of on appeal (the "Concise Statement") required for a children's fast track appeal. [See] Pa.R.A.P. 905(a)(2); [see also] Pa.R.A.P. 1925(a)(2).

Mother did, however, file a Concise Statement on March 29, 2019, which the Court received on April 1, 2019.[4]

Trial Court Opinion, 4/17/19, at 1-6 (italics in original) (footnotes added).

On appeal, Mother raises the following issues for our review:

1. Are [Mother's] [s]hared [l]egal [c]ustody rights [v]iolated by this [O]rder?

[2.] Does this [O]rder violate due process without a fair hearing?

[3.] Was there a hearing on this matter?

_____

[3] The court's Order was filed on February 22, 2019.

[4] Although Mother violated Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement of errors complained of on appeal concurrently with her Notice of Appeal, Mother filed a Concise Statement less than one month later. As there is no assertion of any prejudice, we do not quash or dismiss her appeal. See In re K.T.E.L., 983 A.2d 745, 747 (Pa. Super. 2009) (holding that the failure to file a Rule 1925(b) statement concurrently with a children's fast track appeal is considered a defective notice of appeal, to be disposed of on a case-by-case basis, and declining to quash or dismiss the appeal where there is no prejudice to the other parties as a result of the late filing).

[4.] Is this a violation of a patient's [b]ill of rights according the [P]rivacy [A]ct also known as HIPAA?[5]

Mother's Brief at 3-4 (citations and suggested answers omitted).[6]

In custody cases under the Child Custody Act, ("the Act"), 23 Pa.C.S.A.

§§ 5321-5340, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

C.R.F. v. S.E.F., 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); see

also E.R. v. J.N.B., 129 A.3d 521, 527 (Pa. Super. 2015).

As this Court has explained,

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature

---

[5] "HIPAA" refers to the Health Insurance Portability and Accountability Act of 1996.

[6] We observe that Mother states her issues somewhat differently in her Concise Statement. To the extent that Mother raises any issues not raised in her statement of questions involved, we find that such issues are waived. See Krebs v. United Refining Co., 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues); see also fn. 8, infra.

of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting Jackson

v. Beck, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

M.A.T. v. G.S.T., 989 A.2d 11, 18-19 (Pa. Super. 2010) (en banc) (citations

omitted).

The paramount concern in any custody case decided under the Act is

the best interests of the child. See 23 Pa.C.S.A. §§ 5328, 5338. Section

5323 of the Act provides for the following types of awards:

(a) Types of award.—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:

(1) Shared physical custody.

(2) Primary physical custody.

(3) Partial physical custody.

(4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S.A. § 5323(a).

Section 5328(a) sets forth the 16 best-interest factors that the trial court must consider in making such an award. See E.D. v. M.P., 33 A.3d 73, 79-80 n.2 (Pa. Super. 2011). With regard to the Custody Act, we have stated that "[a]ll of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted). The record must be clear on appeal that the trial court considered all the factors. Id.

We have clarified that the factors under Section 5328(a) are required to be addressed where an order impacts an award of custody and does not merely deal with a discrete and distinct issue. S.W.D. v. S.A.R., 96 A.3d 396 (Pa. Super. 2014).

> It is also true that resolution of an otherwise ancillary matter may affect a form of custody and require consideration of the [Section] 5328(a) factors. For instance, the choice of a child's school may factor into a trial court's decision to award a form of custody when the trial court is addressing a request to establish or change legal or physical custody in connection with the choice of school. One parent in a custody dispute may argue that he or she is entitled to primary physical custody because his or her residence has much better schools. On the other hand, many times—like here—these items may appear as independent, discrete issues[,] advanced by motion or petition[,] that do[] not require a change in the form of custody. Although any decision requires consideration of the child's best interest, only the former situation requires consideration and application of the § 5328(a) factors.

Id. at 403; see also M.O. v. J.T.R., 85 A.3d 1058, 1063 (Pa. Super. 2014) (stating that, "[b]ecause the trial court did not make an award of custody, but merely modified a discrete custody-related issue, it was not bound to address the sixteen statutory factors in determining the [c]hildren's best interest.").

Mother essentially argues that she was denied due process, maintaining that there was no hearing before the "limiting" of her shared legal custody. Mother's Brief at 7-9. Mother further contends that the court was biased against her, "punish[ing]" her for "executing her shared legal custody rights."[7, 8] Id. at 9.

As to Mother's assertion of lack of due process for failure to have a hearing, the trial court observed that

> Mother never requested a hearing on the Motion[,] and has never objected to the [c]ourt not holding a hearing[,] until the filing of the Concise Statement. Absent such a request and objection,

---

[7] In his brief, Father argues that Mother has waived all issues on appeal due to the presentation of a procedurally deficient brief. Father's Brief at 12. Although deficient, we decline to find waiver and proceed with the merits of Mother's appeal, as we are able discern the issues raised and her argument. See Pa.R.A.P. 2101 (stating that the "[b]riefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed...."); see also In re W.H., 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (stating that, "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citation omitted).

[8] To the extent that Mother argues bias in the Argument section of her brief, we find that Mother failed to preserve this challenge[,] as she did not raise it in her Statement of Questions Involved in her brief. See Krebs, 893 A.2d at 797 (holding that the Superior Court will not consider any issue if it has not been set forth in or suggested by the statement of questions involved).

Mother has not … properly preserved a claim associated with the lack of a hearing on the Motion.  [See] Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); [see also Beemac Trucking, LLC v. CNG Concepts, LLC], 134 A.3d 1055, 1058 ([Pa. Super.] 2016) ("[a]n issue raised for the first time in a concise statement is waived").

Trial Court Opinion, 4/17/19, at 8; see also Pa.R.A.P. 302(a) (providing that

"[i]ssues not raised in the lower court are waived and cannot be raised for the

first time on appeal"); Fillmore v. Hill, 665 A.2d 514, 515-16 (Pa. Super.

1995) (stating that, the failure to timely object to a basic and fundamental

error will result in the waiver of that issue).

Further, as to any violation of Mother's shared legal custody rights, the

trial court reasoned that

[t]he Order does not prohibit Mother from contacting [Child's counselor].  Instead—and as noted above—the Order permits Mother to meet with [Child's counselor] and then to have continued communication with him to the extent he deems appropriate; Mother, however, has simply refused to attempt to schedule such a meeting.

The [c]ourt did limit Mother's ability to communicate with [Child's counselor].  Mother had repeatedly advised the [c]ourt that [Child's counselor] did not return her numerous phone calls. Mother continued to make these calls even though she knew [Child's counselor] could not conduct single party communications.  A review of the exhibits to Mother's Motion caused the [c]ourt further concern.  Mother had written [Child's counselor] to request that he initiate family therapy for the parties and Child.  She also requested that he bill her directly for her proportionate share of the unreimbursed counseling fees.  She wrote again, four days later, requesting a response "ASAP[."] Mother had forwarded a copy of [Child's counselor]'s report, [sic] to a Ms. Parnell, who is employed in [Child's counselor]'s office and with whom Mother had obviously previously communicated. In her communications with Ms. Parnell, Mother made inquiry

regarding the nature of [Child's counselor]'s licensure and his failure to respond to Mother's communications. The [c]ourt was concerned that if these communications continued unabated, [Child's counselor] would terminate his services to [] Child.

The [c]ourt was also concerned, however, that Mother's queries remained unanswered. Mother was entitled to have her inquiries answered and concerns addressed. Thus, the [c]ourt ordered that Mother could schedule an appointment with [Child's counselor] to address the same. As stated, Mother has failed to do so.

Finally, despite her contentions to the contrary, the Order does not deprive Mother of her legal custody rights. The Order only speaks to [Child's counselor] and [] Child's counseling; it does not address "full medical" or provide the same to Father. Finally, Mother's arguments regarding the "Pa Shared legal rights statute[,]" "the HIPAA privacy act[,]" the "Patients' Bill of rights[,]" and the lack of a hearing are waived. She never raised those contentions or requested a hearing during the adjudication of the Motion, and presenting them for the first time now on appeal is insufficient to preserve them for appellate review. [See] Pa.R.A.P. 302(a); [see also Beemac Trucking, LLC], 134 A.3d at 1058.

\*        \*        \*

Simply put, the Order permitted Mother to meet with [] Child's counselor to discuss her concerns with him and [] Child's treatment. Father was permitted, but not required, to attend the meeting. All other communications with the counselor were to be conducted in the presence of both parties and were to be initiated when deemed appropriate by the counselor. Mother, moreover, would receive written updates about [] Child's counseling sessions, as issued. The Order also permitted the parties to skip the Generations conciliation and proceed directly to judicial conciliation if they desired. This issue is now moot as Allegheny County no longer conducts Generations conciliations. Finally, nowhere did the Order preclude Mother from returning to the [c]ourt to obtain relief related to [] Child's counseling or custody or with respect to any other matter. Mother, however, has refused to even attempt to schedule an appointment with the counselor, and has instead appealed the Order. For the reasons set forth

- 11 -

above, Mother's arguments for the reversal and/or vacation of the Order should be rejected. The Order should be affirmed.

Trial Court Opinion, 4/17/19, at 9-15 (citations to record omitted).

Upon review, for the reasons stated by the trial court, as set forth above, we affirm the trial court's order.[9]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/5/2019

_____

[9] While not specifically addressed by the trial court, the issue of Child's counselor is ancillary to a determination of legal custody and, therefore, does not require analysis of the custody factors pursuant to 23 Pa.C.S.A. § 5328. See S.W.D. v. S.A.R., supra; see also M.O. v. J.T.R., supra.